**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KELLY BLAND,** individually and on behalf of all others similarly situated, | Case No. 1:26-cv-01375-MJM |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **CLEARONE ADVANTAGE LLC** | |
| *Defendant.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

# **CONTENTS**

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ................................................................................................... 3

III. LEGAL STANDARD .......................................................................................... 5

IV. ARGUMENT ....................................................................................................... 6

    A. The Court Should Disregard ClearOne's Extrinsic Declaration, Which At Most Establishes a Disputed Question of Fact Unsuited to Resolution on a Motion to Dismiss. ........................... 6

    B. The Complaint Plausibly Alleges that ClearOne Is Responsible for All Four Calls. ............. 8

        1. The temporal proximity, common alias, and common subject matter of all four calls support the inference that they were part of a single telemarketing campaign. ....................... 8

        2. The fourth call confirms that "Credit Associates" was a channel into ClearOne. ............. 10

        3. Bland's unrelated prior suit against a different company does not foreclose her claims against ClearOne. ................................................................................................... 10

    C. The Complaint Plausibly Alleges that the Caller IDs Were Spoofed to Conceal ClearOne's Identity. ................................................................................................................ 13

    D. ClearOne's "Consent" Defense Rests on Disputed Extrinsic Facts and, Even If Credited, Does Not Reach the Unlawful Solicitation That Produced It. ..................................................... 15

    E. Even on ClearOne's Own Version of the Facts, the Complaint Cannot Be Dismissed in Its Entirety. ................................................................................................................ 17

    F. In the Alternative, the Complaint Plausibly Alleges Vicarious Liability. .............................. 17

V. CONCLUSION ..................................................................................................... 19

## I. INTRODUCTION

Plaintiff Kelly Bland's Complaint alleges a straightforward telemarketing campaign. Over a two-month span in the spring and summer of 2022, Bland received four calls soliciting debt relief services to a residential cellular number that had been on the National Do Not Call Registry for over a year. Compl. ¶¶ 30, 32-38. Three of the calls came from a caller identifying himself or herself as being with the fictitiously named "Credit Associates" and originated from caller IDs that, when run through publicly available CNAM data, resolved to a restaurant, an individual's cell phone, and unrelated out-of-state exchanges, the classic signature of caller ID spoofing. *Id.* ¶¶ 33-35, 43-48. The fourth call, again beginning with "Credit Associates," bearing the same indicia, ended with a live transfer directly to a representative who identified herself as being "with Defendant ClearOne" and continued the identical debt relief solicitation, after which ClearOne called Bland twice more over the following two days to close the sale. *Id.* ¶¶ 36-38. Accepting those well-pled allegations as true and drawing all reasonable inferences in Bland's favor, as the Court must at this stage, the Complaint easily states a claim.

ClearOne does not defend its Motion on the four corners of the Complaint. Instead, it attaches a declaration from an employee, Gina Stordahl, who was not herself a party to any of the calls at issue, and asks the Court to resolve the case's central factual disputes, whether ClearOne, through an alias or an agent, placed or is responsible for these calls, and whether Bland herself, unprompted, dialed a stranger's number and asked to be called back, in ClearOne's favor, on the pleadings, without discovery. That is not a permissible use of Rule 12(b)(6). And even accepted at face value, ClearOne's own declaration undercuts its own position. Ms. O'Rourke's admitted confusion about "whether Plaintiff had already filled out a request online or if she knew who had transferred Plaintiff over to her," Mot. at 4; *see also*

Stordahl Dec. ¶ 11, is not the account of an employee fielding a cold call from a stranger who dialed ClearOne out of the blue. It is the account of an employee receiving a warm transfer through a lead generation channel Bland did not personally arrange, precisely what Bland alleges. For that matter, it also shows that the precise lead generation channel involved, and the involvement of any possible third parties to it, is solely within ClearOne's knowledge.

ClearOne's remaining arguments fare no better. Its suggestion that Bland's own prior lawsuit against an unrelated company, Consumer Credit Counseling Foundation, Inc. ("CCCF"), somehow forecloses her claims here, mistakes what "Credit Associates" is. It is not a real business, but an illegal, untraceable alias that, like the spoofed caller IDs that accompany it, exists precisely so that more than one telemarketer or lead generator can hide behind it. That a different actor allegedly used the same fake name in an unrelated 2022 case involving different numbers, a different recipient, different transfers, and a different outcome does not make it implausible that "Credit Associates," if not ClearOne itself, also fed leads and made call transfers to ClearOne here. If anything, the fourth call, where "Credit Associates" handed Bland directly to a ClearOne agent who picked up the same debt relief pitch without missing a beat, all the while with the ClearOne agent expecting a transfer, makes that connection more plausible. Nor does ClearOne's declaration establish consent as a matter of law. At most, it describes Bland asking a representative she was transferred to, in the middle of an active solicitation for debt relief services, to call her back a few minutes later. That is not prior express consent to be telemarketed by ClearOne or its agents, and it does nothing to cure the three calls that preceded it, to say nothing of the illegal call on which the Plaintiff was transferred to ClearOne.

2

Because the Complaint plausibly alleges that ClearOne, directly or through an agent operating under the "Credit Associates" alias, initiated telemarketing calls to Bland's number, including after she told the caller to stop, ClearOne's Motion should be denied in its entirety.

## II. BACKGROUND

Bland's residential cellular telephone number has been listed on the National Do Not Call Registry continuously since more than a year before the calls at issue, she has never been a ClearOne customer, and she never consented to receive telemarketing calls from ClearOne. Compl. ¶¶ 25, 30-31.

On April 11, 2022, Bland received a call from caller ID (615) 352-0981 from a person who "claimed to be call[ing] from the fictitiously named 'Credit Associates'" to solicit her for debt relief services. *Id*. ¶ 33. Two days later, on April 13, 2022, she received a second call, from caller ID (707) 371-6915, again from a "Credit Associates" caller soliciting debt relief services; Bland told the caller she was not interested and to stop calling. *Id*. ¶ 34. On April 19, 2022, a third call came from caller ID (727) 408-0261; Bland again stated she was not interested. *Id*. ¶ 35. Then, on June 9, 2022, a fourth call came from caller ID (512) 886-5187, again from a "Credit Associates" caller soliciting debt relief services, and during that call Bland was connected to an individual who stated her name was "Laura O'Rourke" with Defendant ClearOne, who continued selling Bland on ClearOne's debt relief services. *Id*. ¶¶ 36-37. Bland received a follow-up call the next day from Ms. O'Rourke personally. *Id*. ¶ 38.

The Complaint alleges that counsel obtained CNAM (Caller ID NAMe) look-ups for each of the four numbers, none of which returned any connection to ClearOne, and which were indicative of spoofed calls: (615) 352-0981 returned "J. ALEXANDER'S," a restaurant chain, on Bandwidth's network; (707) 371-6915 returned "WILLITS CA" on Bandwidth's network; (727)

408-0261 returned "CZAR SANDERS," an individual, on Verizon's network; and (512) 886-5187 returned "SMITHVILLE TX" on IP Horizon's network. *Id.* ¶¶ 43-48. None of the numbers permitted Bland to lodge a do not call request during business hours. *Id.* ¶ 46.

ClearOne moves to dismiss on two grounds. First, relying entirely on the Stordahl Declaration, ClearOne contends it does not use, and did not place calls from, any of the four (demonstrably spoofed) caller IDs, and that the first three calls therefore cannot be tied to ClearOne at all. Mot. at 5-9; Stordahl Dec. ¶¶ 5-8. Second, as to the fourth call, ClearOne contends, contrary to the complaint and Bland's telephone records, that Bland herself placed an inbound call to a ClearOne agent, Ms. O'Rourke, and expressly consented to a callback, such that the fourth call and the two follow-up calls cannot support liability. Mot. at 4, 9-10; Stordahl Dec. ¶¶ 9-16. ClearOne also argues that Bland's litigation history, including a separate 2022 suit in which she attributed the "Credit Associates" name to CCCF, undermines the plausibility of her allegations here. Mot. at 13-15.

Two features of the Declaration bear noting at the outset. First, although the Declaration recounts what was said on a call Ms. Stordahl does not claim to have participated in, the recording it describes has not been produced, authenticated, or lodged with the Court. *Id.* ¶¶ 10-14. Notably, the Declaration also confirms that Bland's telephone number is (817) 903-XXXX, *id.* ¶¶ 5, 13, and that the June 9, 2022 call ClearOne says it received displayed the caller ID (512) 886-5187, *id.* ¶ 9, one of the four numbers the Complaint alleges was spoofed. Compl. ¶¶ 36, 43.

ClearOne's declaration thus proves too much. Ms. Stordahl swears both that ClearOne "does not own or use" the caller ID (512) 886-5187, and that on June 9, 2022 ClearOne "received a call from caller ID (512) 886-5187." Stordahl Dec. ¶¶ 6, 9. But (512) 886-5187 is not Bland's number either. Bland's number is the (817) XXX-XXXX number that appears

4

throughout ClearOne's own records and that Ms. O'Rourke wrote down and dialed. *Id.* ¶¶ 5, 12-13, 15. ClearOne's business records therefore do not show a call from Kelly Bland's telephone at all. They show a call bearing the very same spoofed Texas caller ID that had, moments earlier, appeared on Bland's handset. Compl. ¶¶ 36, 43. It is also why ClearOne's agent had to ask Bland for a callback number in the first place. Stordahl Dec. ¶ 12. Had Bland dialed ClearOne from her own telephone, ClearOne's records would show Ms. Bland's number, and its agent would have been looking at it.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A complaint must contain sufficient factual matter to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (cleaned up); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A Rule 12(b)(6) motion tests the sufficiency of the complaint. It is not a vehicle for the Court to weigh a defendant's own extrinsic, contested evidence against the plaintiff's well-pled allegations. If "matters outside the pleadings are presented to and not excluded by the court," the motion "must be treated as one for summary judgment under Rule 56," and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Finally, consent is an affirmative defense as to which the defendant bears the burden, *Penn v. NRA Group, LLC*, No. JKB–13–0785, 2014 WL 2986787, at *1-4 (D.Md. July 1, 2014), and a court may resolve an affirmative defense on a Rule 12(b)(6) motion only where all facts

necessary to that defense clearly appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## IV. ARGUMENT

### A. The Court Should Disregard ClearOne's Extrinsic Declaration, Which At Most Establishes a Disputed Question of Fact Unsuited to Resolution on a Motion to Dismiss.

ClearOne's Motion relies primarily on purported evidentiary and factual deficiencies it manufactures with extrinsic evidence. Every argument it makes as to the first three calls, and its entire "consent" argument as to the fourth, depends on the Court crediting the Stordahl Declaration over Bland's own well-pled allegations. That is not the office of a Rule 12(b)(6) motion. If the Court considers the Declaration at all, it may do so only by converting the motion to one for summary judgment and affording Bland a reasonable opportunity to respond with her own evidence, including her telephone records, which will confirm, consistent with the Complaint's allegations, that the June 9, 2022, call was a call *she received*, *not a call she placed*. Fed. R. Civ. P. 12(d).

Even taken entirely at face value, the Stordahl Declaration does not say what ClearOne needs it to say. Ms. Stordahl avers that Ms. O'Rourke, upon picking up the call, "asked whether Plaintiff had already filled out a request online *or if she knew who had transferred Plaintiff over to her*." Mot. at 4; *see also* Stordahl Dec. ¶ 11. That is not the account of an agent answering an unsolicited call from a stranger who independently decided to dial ClearOne's number. It is the account of an agent who did not know how the call reached her desk, exactly what one would expect if, as Bland alleges, "Credit Associates" transferred Bland to Ms. O'Rourke mid-solicitation. Compl. ¶¶ 36-37. ClearOne's own evidence corroborates, rather than refutes, the very transfer relationship it asks the Court to find implausible.

6

Notably, the Motion is significant for what it does not say: ClearOne does not explicitly deny that it either places calls with aliases like "Credit Associates" or, alternatively, hires call centers to place calls *en masse* and then transfer the interested ones to ClearOne, where its employees will then proceed to sell ClearOne's goods and services, precisely as is alleged here. Compl. ¶ 40-42. Defendant cannot defeat these well-pled factual allegations in the Complaint through an affidavit and extrinsic evidence that must be weighed and sorted out, in discovery.

Fourth Circuit law forecloses the approach ClearOne takes. The Stordahl Declaration is not attached to the Complaint, not referenced in it, and not integral to it. It is contested extrinsic evidence, offered for the truth of its contents, for the express purpose of contradicting well-pled allegations. Considering it would convert the Motion into one for summary judgment. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

Even setting that threshold problem aside, the Declaration would not bear the weight ClearOne places on it. It is qualified "to the best of my knowledge, information, and belief," Stordahl Dec. at 1, a formulation courts have long recognized conveys only that the declarant believes what she has been told rather than that she knows it. *See, e.g., America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (statement made "to the best of my knowledge and belief" insufficient); *Grant v. Citibank (S.D.), N.A.*, No. 10 Civ. 2955(KNF), 2010 WL 5187754, at *4-*5 (S.D.N.Y. Dec. 6, 2010). The qualification matters, because Ms. Stordahl is ClearOne's Director of Program Management and does not claim to have been on the June 9, 2022 call. Her account of what was said, including her characterization of Bland's words as "express consent," Stordahl Dec. ¶¶ 11-16, is argument layered atop a recording that ClearOne describes but has neither produced nor authenticated. ClearOne asks this Court to dismiss the case with prejudice on the strength of a recording no one but ClearOne has heard.

7

If the Court is nonetheless inclined to consider the Declaration, Rule 12(d) requires conversion and "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Bland respectfully requests that opportunity. She would submit her own declaration and her carrier records for June 9, 2022, which reflect an incoming call to her cellular telephone that afternoon lasting approximately five minutes, not an outgoing call placed by her to ClearOne or to anyone else.

### B. The Complaint Plausibly Alleges that ClearOne Is Responsible for All Four Calls.

**1. The temporal proximity, common alias, and common subject matter of all four calls support the inference that they were part of a single telemarketing campaign.**

Courts routinely credit closely timed calls sharing a common subject matter, script, or identifying alias as part of a single telemarketing effort, even where a later call is the one that reveals the ultimate seller's identity. *See Toney v. Quality Res.*, Inc., 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("the content and timing of the fourth call" permitted the inference that the defendant made the preceding three); *Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *6 (N.D. Ill. Apr. 12, 2022) (inferring common origin across seven calls sharing an identical script, though the caller's identity was confirmed only on the last); *Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) (collecting authority for the proposition that one sufficiently alleges "multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once" and concluding that "[I]t is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

The same reasoning applies with full force here. All four calls, each bearing spoofed caller IDs, solicited the identical product, debt relief services, within a two-month window, and

all four were placed by a caller who began the call by using the identical fictitious identifier, "Credit Associates." Compl. ¶¶ 33-36. That is a far more specific and unusual shared indicium than a mere shared telephone number, and it supports the same inference of common origin the courts cited above recognized. And as to the fourth call itself, where the eventual identified caller identified herself by name and affiliation, "Laura O'Rourke" with Defendant ClearOne, Compl. ¶ 37, courts credit that kind of self-identification as true at the pleading stage: "when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025).

Indeed, ClearOne does not appear to dispute that Ms. O'Rourke was its employee, and merely disputes that the Plaintiff was transferred to her, as opposed to allegedly calling ClearOne herself. Discovery will easily sort that out, and it will lay bare the obvious alternative that ClearOne does not itself deny, that it was transferred the call from someone else it hired. *See Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)). There is no reason to credit Ms. O'Rourke's eventual self-identification as with CreditOne as true while simultaneously ignoring the significance of the initial "Credit Associates" identifier used to reach Bland just as CreditOne had on three prior occasions.

9

**2. The fourth call confirms that "Credit Associates" was a channel into ClearOne.**

ClearOne's own account of the fourth call defeats, rather than supports, its effort to sever the earlier three. On ClearOne's telling, a "Credit Associates" solicitation for debt relief services that led, without interruption, and on a smooth transfer, directly to a ClearOne sales representative who continued the identical pitch and closed the loop over two additional calls. Compl. ¶¶ 36-38; Stordahl Dec. ¶¶ 9-16. That kind of "smooth transfer" between callers "shows a cooperative relationship from which one may infer authority or apparent authority." *Doyle v. GoHealth*, LLC, No. CV 22-04291, 2023 WL 11900257, at *3 (D.N.J. Dec. 7, 2023) (quoting *Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022)).

Having conceded that "Credit Associates" fed at least one live lead directly into its own sales force without providing the precise information for that proposition, ClearOne cannot plausibly ask the Court to treat the three earlier "Credit Associates" solicitations, made in the same two-month window, using the same alias, for the same product, as unrelated coincidences as a matter of law, and certainly not at the pleadings stage. Whether ClearOne directly placed those calls, as is alleged in the Complaint, authorized "Credit Associates" to do so, or otherwise remains responsible "on behalf of" an ongoing lead generation arrangement, presents a factual question that cannot be resolved on a Rule 12(b)(6) motion. *See Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024) (mechanics of a lead generation relationship are "peculiarly within the possession and control of the defendant[s]").

**3. Bland's unrelated prior suit against a different company does not foreclose her claims against ClearOne.**

ClearOne's principal response to these well-pled allegations is that Bland, in an unrelated 2022 case, attributed the "Credit Associates" name to a different company, Consumer Credit

10

Counseling Foundation, Inc. Mot. at 14-15 (citing *Pinn v. Consumer Credit Counseling Foundation, Inc.*, No. 4:22-cv-04048-DMR (N.D. Cal.)). That argument mistakes what "Credit Associates" is. The Complaint plainly alleges that "Credit Associates" is not a real, registered business but instead an illegally fictitious name used "at the outset of illegal calls so as to conceal" the true seller's identity. Compl. ¶ 41. A generic invented cover identity of that kind is not the property of any single telemarketer. It is precisely the sort of shared, interchangeable alias that lead generators and telemarketing vendors deploy across multiple engagements and multiple ultimate sellers for the very reason that it cannot be traced back to any of them. The FCC has long recognized that sellers who outsource their telemarketing to unsupervised third parties operating behind generic identities create exactly this evidentiary problem, and that consumers should not be left "without an effective remedy for telemarketing intrusions" as a result. *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6588 (2013).

That the "Credit Associates" fake name also appeared, on different calls, at a different time, and with a different outcome, in a wholly separate suit against a different company does not make it implausible that the same alias also led to ClearOne here. If anything, it confirms that "Credit Associates" functions as exactly the kind of shared, untraceable front Bland alleges it to be, used by more than one debt relief business as a matter of course.

ClearOne's own authorities do not hold otherwise. *Nickson v. Advanced Mktg. & Processing, Inc.*, No. CV DLB-22-2203, 2023 WL 4932879, at *4 (D. Md. Aug. 2, 2023), and *Worsham v. Direct Energy Servs.*, LLC, No. SAG-20-193, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021), both discounted attribution where the plaintiff's own speculative and conclusory allegations were insufficient to show that the company identified was ever named on the calls. ClearOne has made no such showing here. The CCCF suit involved different callback numbers

11

entirely, and it says nothing about who controlled (615) 352-0981, (707) 371-6915, (727) 408-0261, or (512) 886-5187 on the dates Bland received these calls. And, unlike *Nickson* and *Worsham*, moreover, the fourth call here *directly ties "Credit Associates" to ClearOne*, a fact absent from either of ClearOne's cited decisions and one that makes Bland's proposed connection between "Credit Associates" and ClearOne considerably more plausible than the speculative connections those courts rejected. If ClearOne is in possession of some other (yet-unpled) evidence or explanation tending to show why the fourth "Credit Associates" call led smoothly and directly to ClearOne, that is a matter for discovery, not the pleadings stage.

ClearOne's reliance on the *Pinn* complaint also asks the Court to do something Rule 201 does not permit. A court may take judicial notice that a complaint was filed in another case. It may not take judicial notice that the allegations within it are true, let alone draw inferences the plaintiff did not even plead. Fed. R. Evid. 201(b). Its syllogism is that because Bland once alleged that CCCF used the "Credit Associates" name, CCCF must in fact have been the only entity ever to use it, and therefore ClearOne cannot have been. Every step requires the Court to accept an unadjudicated allegation from a different case, add something to it, namely the contention that no other party has ever used that fictitiousname, in a case about different calls, against a different defendant, and to weigh it against the well-pled allegations of this Complaint. That is not judicial notice. That is fact finding.

There is, in any event, no inconsistency to exploit. The *Pinn* case concerned different calls, on different dates, from different numbers. That one telemarketer used an untraceable alias on one occasion says nothing about who used it on another. And even if the two accounts were in tension, Rule 8(d) expressly permits a party to plead "alternatively or hypothetically" and "regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3). A consumer repeatedly called by

12

telemarketers hiding behind interchangeable fake names does not forfeit her claim against the second seller by having sued the first.

Most fundamentally, the argument defeats itself. ClearOne's premise is that "Credit Associates" is a generic name used by debt relief sellers other than the one Bland has sued. But that is Bland's precise allegation. If the name were proprietary to a single company, it would identify the caller and this dispute would not exist. The name has value to telemarketers like ClearOne precisely because it is generic, untraceable, and shared, so that a caller could conceal its identity. ClearOne cannot invoke anonymity by design as a defense while simultaneously demanding that a consumer identify, at the pleading stage and without discovery, which of the alias's users was behind any particular call. Here, one of the calls ended with a ClearOne employee, on ClearOne's own recording, selling ClearOne's services. This is not a case about a plaintiff who cannot say who called her.

### C. The Complaint Plausibly Alleges that the Caller IDs Were Spoofed to Conceal ClearOne's Identity.

The Complaint alleges, and ClearOne's Motion does not dispute, that each of the four caller IDs at issue resolved through CNAM look-ups to entities with no apparent connection to ClearOne, including a restaurant chain, an individual's personal cell phone, and generic geographic locations. Compl. ¶¶ 43-48. That pattern, a telemarketing number resolving to a random, unconnected third party rather than the seller whose product is being pitched, is not evidence that the calls are unconnected to the seller. It is the well-recognized signature of caller ID spoofing. "Phone numbers are easily spoofed," *Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025), and requiring a plaintiff to trace a spoofed number back to its owner "would reward robocallers for attempting to obfuscate their

13

identity in order to prevent TCPA liability." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *13 (W.D. Tex. May 23, 2024).

ClearOne cannot have it both ways. It relies on the CNAM mismatch for the first three numbers to argue that those calls are unconnected to it as a matter of law, Mot. at 6-8, while asking the Court to treat the fourth number, (512) 886-5187, which resolves to "SMITHVILLE TX" on the IP Horizon network, every bit as disconnected on its face from a Maryland-based debt-relief servicer as the other three, as somehow a legitimate line that Bland herself decided, unprompted, to dial, a contention belied by Ms. Bland's own calling records. Nothing in the Complaint or the Stordahl Declaration explains why this fourth number, alone among the four, should be credited as an authentic, non-spoofed call somehow placed *to ClearOne*, rather than the same telemarketing apparatus reaching Bland's phone yet again.

Drawing all reasonable inferences in Bland's favor, as the Court must, the most plausible reading is that the fourth number was spoofed just like the other three, and that the "inbound call" Ms. Stordahl describes was, in fact, the same operation routing Bland, through a spoofed number, into a live transfer with ClearOne's own employee sales force, exactly as Bland alleges. Compl. ¶¶ 36-37. Bland's own telephone records, like the plaintiffs in analogous cases, will confirm that this was a call she received rather than one she placed, and that evidence cannot be weighed against her on a motion to dismiss.

ClearOne's own evidence supplies the strongest confirmation that the June 9 call was spoofed. Ms. Stordahl swears that ClearOne "does not own or use" caller ID (512) 886-5187, Stordahl Dec. ¶ 6, and that on June 9, 2022 ClearOne "received a call from caller ID (512) 886-5187," *id.* ¶ 9. That number is not Bland's. Bland's number is (817) XXX-XXXX, which the Declaration itself identifies as the number at issue, the number Bland gave as her callback

14

number, and the number Ms. O'Rourke then dialed. *Id.* ¶¶ 5, 12-13, 15. ClearOne's records accordingly do not reflect a call from Kelly Bland's telephone. They reflect a call bearing the identical spoofed caller ID that had just appeared on Bland's handset in the middle of a "Credit Associates" debt relief solicitation. Compl. ¶¶ 36, 43. At the pleading stage, that mismatch materially undermines ClearOne's narrative. Had Bland picked up her own telephone and dialed ClearOne, ClearOne's records would show (817) XXX-XXXX, and Ms. O'Rourke would have had no reason to ask for a number already displayed in front of her. ClearOne offers no explanation in its motion or declaration for this, because it has none that is available to it.

Ms. Stordahl's carefully framed denials confirm the point rather than answer it. No one other than a legitimate subscriber "owns" a spoofed number used to make illegal and unsolicited calls; that is what makes it spoofed. A seller that calls using a highly illegal spoofed number would not expect to own the numbers it is spoofing, and a declaration confirming as much is entirely consistent with the Complaint. What the Declaration conspicuously does not say is that ClearOne did not purchase, accept, or pay for transferred telemarketing leads in 2022, that it had no relationship with any marketing or call center vendor operating as "Credit Associates," or that the June 9 call did not reach it by transfer from such a vendor. Compl. ¶¶ 40-42. Those omissions are conspicuous, and at a minimum they identify precisely the factual territory that discovery will cover. *See Guadian*, 2024 WL 5184488, at *3.

### D. ClearOne's "Consent" Defense Rests on Disputed Extrinsic Facts and, Even If Credited, Does Not Reach the Unlawful Solicitation That Produced It.

ClearOne's consent argument suffers from the same threshold defect as its direct liability argument. It depends entirely on the Stordahl Declaration, not on any allegation in the Complaint, and therefore cannot be resolved on a Rule 12(b)(6) motion. *See supra* Part IV. A.

But even accepting the Declaration's account on its own terms, it does not establish consent as a matter of law. At most, it shows that Bland, having already been solicited for debt relief services and transferred mid-call by "Credit Associates," asked the ClearOne representative she was routed to for a callback because she was about to enter an elevator. Stordahl Dec. ¶ 11. A request for a return call, extracted in the middle of, and as the direct product of, an unlawful telephone solicitation from a spoofed number, is not "prior express consent" to any future solicitation, to say nothing of the solicitation that precipitated it. It does not retroactively authorize the call that produced it, and it plainly does nothing to cure the three earlier, independent violations, including the April 13, 2022 call, after which Bland expressly told the caller to stop. Compl. ¶ 34. A defendant cannot bootstrap consent to a telemarketing campaign out of the fruits of that same campaign's own antecedent unlawful contact.

At most, ClearOne has identified a disputed question of fact about the scope and effect of anything Bland said during the fourth call as it pertained to subsequent calls, a question for discovery and, if necessary, summary judgment, not dismissal.

Two further points confirm that consent cannot be resolved now. *First*, consent is an affirmative defense on which ClearOne bears the burden, and this Circuit permits a court to reach an affirmative defense on a Rule 12(b)(6) motion only where all facts necessary to it appear clearly on the face of the complaint. *Goodman*, 494 F.3d at 464. The Complaint alleges the opposite of what ClearOne needs, that Bland never consented to telemarketing from ClearOne, that she has never been a ClearOne customer, that she explicitly asked for the calls to stop, and that her number had been on the Registry for more than a year. Compl. ¶¶ 25, 30-31. ClearOne's defense appears nowhere on the face of the Complaint. It appears only in ClearOne's own declaration. Second, an oral statement made in the middle of an ongoing solicitation is not the

16

kind of permission that excuses a telephone solicitation to a number on the National Do Not Call Registry in the first instance, let alone somehow immunize it. On ClearOne's own account, what it obtained was an oral remark, made after the solicitation was already underway, by a consumer who had been routed to it without her prior permission. Whatever else that may be, it is not sufficient permission under the TCPA, and it is certainly not "prior."

### E. Even on ClearOne's Own Version of the Facts, the Complaint Cannot Be Dismissed in Its Entirety.

There is a more basic problem with the relief ClearOne seeks. Section 227(c)(5) requires only that a plaintiff have received "more than one telephone call within any 12-month period by or on behalf of the same entity," and provides for recovery of statutory damages for each violation. 47 U.S.C. § 227(c)(5). It does not necessarily require that all the calls must have been violative. *Id.* ClearOne's own Declaration establishes that element. Ms. Stordahl swears that Ms. O'Rourke called Bland on June 9, 2022, and again on June 10, 2022. Stordahl Dec. ¶ 15; *see also* Compl. ¶ 38. Those are two telemarketing calls, placed by ClearOne itself, to a number ClearOne does not dispute was registered on the National Do Not Call Registry. ClearOne's only answer is consent, and consent is a contested affirmative defense that cannot be resolved on the pleadings for the reasons already given. Even accepting ClearOne's version of events wholesale, then, the Motion cannot dispose of this case, and dismissal with prejudice is doubly unwarranted.

### F. In the Alternative, the Complaint Plausibly Alleges Vicarious Liability.

Section 227(c)(5) of the TCPA creates a private right of action for a person who receives more than one call "by or on behalf of the same entity" in violation of the Do Not Call regulations, language that extends liability to calls made for a seller's benefit without regard to the technical formalities of common law agency. 47 U.S.C. § 227(c)(5); *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026) (vicarious liability

17

under Section 227(c) might attach to a company whose goods or services are promoted on the call); *see also In re Joint Petition Filed by Dish Network*, LLC, 28 F.C.C.R. at 6588 (a seller may not avoid liability "by outsourcing its telemarketing activities to unsupervised third parties").

Even under ordinary agency principles, the Complaint's allegations suffice at the pleading stage. The live, uninterrupted transfer from a "Credit Associates" solicitation directly into ClearOne's own representative, who picked up the identical debt relief pitch without hesitation and followed up twice more to close the sale, is precisely the kind of coordinated handoff from which authority, whether actual or apparent, may reasonably be inferred at this stage. *See Doyle*, 2023 WL 11900257, at *3; *Landy*, 2022 WL 797967, at *3. Whether that arrangement reflects an outsourced call center, another employee, a formal lead generation contract with "Credit Associates," a shared dialing platform, or some other relationship between "Credit Associates" and ClearOne is a factual question resting on information "peculiarly within the possession and control of the defendant," *Guadian*, 2024 WL 5184488, at *3, and is properly resolved through discovery rather than on the pleadings.

ClearOne's ratification argument fails for the same reason. It contends it received no benefit because no sale closed. Mot. at 13; Stordahl Dec. ¶ 11. But ratification does not require a consummated sale. A principal may ratify an act not only by "receiving or retaining [the] benefits it generates," but also simply by "failing to object to it or to repudiate it." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). ClearOne accepted the transferred call, took Bland's name, callback number, and state of residence, and then worked the lead across two additional calls. Stordahl Dec. ¶¶ 12-15. A seller that takes delivery of a consumer, records her contact information, and then pursues the sale, has accepted the benefit of that call, whether or not the pitch ultimately succeeded. Whether ClearOne knew the material

18

facts about how that lead was generated is itself a question of fact, *id.*, and it turns on records only ClearOne holds.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny ClearOne's Motion to Dismiss in its entirety, or, in the alternative, grant Plaintiff leave to amend.

RESPECTFULLY SUBMITTED AND DATED this August 4, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: August 4, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

19